PAUL V. SIMPSON, BAR NO. 83878
RONALD F. GARRITY, BAR NO. 110488
H. ANN LIROFF, BAR NO. 113180
SIMPSON, GARRITY, INNES & JACUZZI
Professional Corporation
601 Gateway Boulevard, Suite 950
South San Francisco, California 94080
Telephone: (650) 615-4860
Fax: (650) 615-4861
psimpson@sgijlaw.com
rgarrity@sgijlaw.com
aliroff@sgijlaw.com

Attorneys for Plaintiffs
Cepheid, Peter Farrell, Glynn Perry and Jennifer Richards

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEPHEID, a California corporation, PETER FARRELL, GLYNN PERRY AND JENNIFER RICHARDS,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ABBOTT LABORATORIES, an Illinois Corporation,<br><br>                    Defendant. | Case No. 5:14-cv-05652 EJD<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ABBOTT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STAY ACTION FOR DECLARATORY RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**<br><br>Judge:  Hon. Edward J. Davila<br>Date:   June 4, 2015<br>Time:   9:00 am<br>Crtrm:  4 |

{CLIENT FILES/32247/2/00324243.DOCX}

# Table of Contents

**Page**

I.   INTRODUCTION AND STATEMENT OF THE ISSUE .................................................. 1

II.   STATEMENT OF FACTS .............................................................................................. 1

III.   LEGAL ARGUMENT .................................................................................................... 6

  A.  The Brillhart Factors Weigh in Favor of Proceeding with this Action.................................... 6

   1) Brillhart Factor 2:  Plaintiffs Properly Filed in Northern California, While Defendant is Forum Shopping .................................................................................... 7

   2) Brillhart Factors 1 and 3:  Plaintiffs' Action Is Needed And There Is No Compulsion to Dismiss the Action Simply to Avoid Duplicative Litigation .......................... 16

   3) Defendant Relies Heavily on Insurance Related Cases in its Motion, which are inapplicable ................................................................................................... 18

  B.  Other Factors Favor Proceeding with this Action................................................................. 18

IV.   CONCLUSION ............................................................................................................ 19

**Cases**

Allstate Ins. Co. v. Herron,

   634 F. 3d 1101, 1107 (9th Cir. 2011) ........................................................................ 13

Application Group, Inc. v. Hunter Group,

   61 Cal. App. 4th 881 (Cal. Ct. App. 1st Dist. 1998). ............................................. 9, 10

Birbrower, Montalbano, Condon & Frank v. Superior Court,

   17 Cal. 4th 119 (1998) ................................................................................................ 10

Brillhart v. Excess In. Co.,

   316 U.S. 491(1942) ........................................................................................ 7, 17, 18

Chamberlain v. Allstate Ins. Co.,

   931 F. 2d 1361, 1367 (9th Cir. 1991) ..................................................................... 7, 18

Continental Casualty Co v. Robsac Indus.,

   947 F. 2d 1367, 1370-1371 (9th Cir. 1991) ...................................................... 7, 16, 18

Convergys Corporation v. Keener,

   276 Ga. 808, 812 (2003) ............................................................................................ 17

DeFoe v. Proctor & Gamble Co.,

   831 F. Supp. 776 (N.D. Cal. 1993) ................................................................... 8, 14, 15

Dole Food Co. v. Watts,

   303 F.3d 1104, 1118 (9th Cir. 2002) ......................................................................... 18

Edwards v. Arthur Anderson,

   44 Cal. 4th 937, 945 (2008) ..................................................................................... 8, 9

Google, Inc. v. Microsoft Corporation,

   415 F. Supp. 2d 1018 (N.D. Cal. 2005) ............................................................... 14, 15

Government Employees Ins. Co. v. Dizol,

   133 F.3d 1220, 1227 (9th Cir. 1998) ............................................................... 7, 12, 13

Murphy v. Schneider Nat'l Inc.,

   362 F. 3d 1133, 1140 (9th Cir. 2004) ......................................................................... 19

New Orleans Public Serv. Inc. v Council of New Orleans,

491 U.S. 350, 358-359 (1989) .................................................................................... 18

Sherwin-Williams Co. v. Holmes Cnty.,

343 F. 3d 383, 391 (5th Cir. 2003) .............................................................................. 12

Silguero v. Creteguard, Inc.,

187 Cal. App. 4th 60, 68-69 (2010) .............................................................................. 9

Stomp, Inc. v. Neato, LLC,

61 F. Supp. 2d 1074, 1082 (C.D. Cal. 1999) ............................................................... 12

Travelers Indem. Co. v. Madonna,

914 F.2d 1364, 1371 (9th Cir. 1990) ........................................................................... 12

VL Sys., Inc. v. Unisen, Inc.,

152 Cal. App. 4th 708 (2007)) ...................................................................................... 9

Z Line Design, Inc. v. Bell 'O Int'l, LLC,

218 F.R.D. 663 (N.D. Cal. 2003) ................................................................................ 11

**Statutes**

15 U.S.C. §§1011-1015 .................................................................................................. 18

California. Bus. & Prof. Code Section 16600 .................................................... 8, 9, 10, 13, 17

I. **INTRODUCTION AND STATEMENT OF THE ISSUE**

Plaintiffs properly filed this Action in Northern California, where the individual Plaintiffs are employed and where Cepheid is based, seeking declaratory relief on four restrictive covenants that violate California law.  Defendant is requesting this Court to exercise its discretion to dismiss or stay this Action as part of its overall strategy to apply unlawful covenants to California based employees.  Plaintiffs request this Court to exercise its discretion to proceed with this Action, and not to issue an order that would support Defendant's strategy.

II. **STATEMENT OF FACTS**

Cepheid ("Cepheid") is a California corporation, which has developed and sells products to the healthcare industry that detect the presence or absence of infection pathogens.  According to Michael Fitzgerald, a member of Cepheid's Executive Team, two thirds of Cepheid's revenue flows into Cepheid's Sunnyvale headquarters and the majority of Cepheid's products are manufactured in Sunnyvale, California. (Decl. of Fitzgerald, ¶25.)  Cepheid does not sell any type of handheld testing product. (Decl. of Farrell, ¶23.)

Abbott Point of Care ("APOC"), a Division of Abbott Laboratories, sells handheld devices that are geared towards measuring cardiac markers and blood gases at a patient's bedside with no microbiology products. (Decl. of Farrell, ¶23.)  None of APOC's products measure pathogens; and the APOC and Cepheid do not sell to the same customers. (Decl. of Farrell, ¶23.)  Based upon these factors, Peter Farrell, who has held senior management positions in both companies, concludes that APOC is not a competitor of Cepheid. (Decl. of Farrell, ¶23.)

It is undisputed that plaintiffs Peter Farrell ("Farrell"), Glynn Perry ("Perry") and Jennifer Richards ("Richards") all worked for APOC in various capacities.  APOC is based in Princeton, New Jersey.  Farrell and Richards signed Employee Agreements at the outset of their respective

employment; Perry signed an Employee Agreement in February 2014. (Decl. of Farrell, ¶3; Decl. of Richards, ¶3; and Decl. of Perry, ¶3.)  All three Employee Agreements had the same restrictive covenants:

> Paragraph 9 states "EMPLOYEE shall not, during the term of employment with ABBOTT or for a period of one year after termination of employment with ABBOTT, in each country in which ABBOTT conducts business, engage, directly or indirectly, in any activity or employment, for the benefit of EMPLOYEE or others, in a manner that contributes to any research, discovery, development, manufacture, importation, marketing, promotion, sale or use of one or more Competing Products.  This paragraph shall only apply to the extent permitted by the laws of the state in which EMPLOYEE works or worked on behalf of ABBOTT immediately prior to the termination of employment." (See Exhibit A, B, and C to Plaintiffs' First Amended Complaint for Declaration Relief, §9.)

> Paragraph 10 states " EMPLOYEE shall not, during the term of employment with ABBOTT or for a period of one year after the termination of employment with ABBOTT in each country in which ABBOTT conducts business, engage, directly or indirectly, for the benefit of EMPLOYEE or others, in any activity or employment in the performance of which any Confidential Information obtained, provided or otherwise acquired, directly or indirectly, during the term of employment with ABBOTT is likely to be used or disclosed, notwithstanding the EMPLOYEE's undertaking to the contrary…." (See Exhibit A, B, and C to Plaintiffs' First Amended Complaint for Declaration Relief, §10.)

> Paragraph 11 states "EMPLOYEE shall not, directly or indirectly, during the term of employment with ABBOTT or for a period of one year after termination of employment with ABBOTT, promote or market promote or market any Competing Products to any Abbott Customer or solicit any Abbott Customers for purposes of selling any Competing Products." (See Exhibit A, B, and C to Plaintiffs' First Amended Complaint for Declaration Relief, §11.)

> Paragraph 12 states "EMPLOYEE shall not, during the term of employment with ABBOTT or for a period of two years after termination of employment with ABBOTT, directly or indirectly, for the benefit of EMPLOYEE or others, solicit or assist in soliciting to work as an employee, independent contractor, partner or otherwise, any employee of ABBOTT about whom EMPLOYEE acquired knowledge through EMPLOYEE's employment with ABBOTT." (See Exhibit A, B, and C to Plaintiffs' First Amended Complaint for Declaration Relief, §12.)

All three Employee Agreements contain a provision regarding choice of law, set forth in Paragraph 17, which provides as follows:

> "This agreement shall be construed, and its enforceability and the relationship of the parties shall be determined in all respects under the laws of Illinois, without giving effect to conflict of laws."

Farrell's employment was terminated by APOC on January 10, 2014; and on June 6, 2014,

he accepted employment with California-based Cepheid as an Executive Vice President in charge of Worldwide Commercial Operations. (Decl. of Farrell, ¶6.)  At the time of his hire, he signed an Offer letter with Cepheid, a California corporation, in which it agreed to pay his moving expenses to California.  He also signed a Cepheid Indemnification Agreement, a Cepheid California Invention Assignment and Confidentiality Agreement, a Change of Control Retention and Severance Agreement, all of which explicitly state that the terms of the various agreements are governed by California law. (Decl. of Farrell, ¶11 and Exhs. D, E, and F to Farrell Decl.)

In his role as an EVP, Farrell is responsible for worldwide operations, which include but are not limited to, all aspects of the business, such as strategy, sales, customer service, marketing and communications.  Although he travels internationally extensively, he spends considerable time in Cepheid's Sunnyvale headquarters in order to integrally connect with Cepheid's Sunnyvale operations. (Decl. of Farrell, ¶¶8, 9.)

In Sunnyvale, he has a dedicated office and a fully-furnished corporate apartment, in which he has personal items to avoid transportation back and forth. (Decl. of Farrell, ¶8.)  When not traveling, he works out of his Cepheid headquarters at least four times per month, often four or five days per week.  Over the next four months, he expects to travel to Cepheid's Sunnyvale headquarters sixteen times. When in Sunnyvale, Farrell spends a substantial portion of his time interfacing with John L. Bishop, the CEO of Cepheid, meeting with other Sunnyvale-based EVPs, attending sales and strategic planning meetings, and managing the review of Cepheid's products and processes, which are primarily manufactured in California. (Decl. of Farrell, ¶¶9, 12.)

When Farrell is traveling or not in his physical California office, he communicates daily with John L. Bishop, the CEO either on the phone or electronically.  He has a Cepheid laptop, which was pre-loaded with a Cisco AnyConnect Virtual Private Network Client function ("VPN").  He uses it for all of his work; and it allows him to access other California-based Cepheid

employees via email and to share documents whenever he is not in his physical, California office. Farrell has a Cepheid email address, as well as direct local 408 area code land and cell phones. (Decl. of Farrell, ¶¶12, 13, 14, 15 and 16.)  The Cepheid VPN turns Ferrell's laptop into a virtual California office, which allows him to access his physical office and other Cepheid employees wherever he is, including Tennessee, where he maintains a residence.

Glynn Perry was another long-time APOC employee.  After 29 years at Abbott and APOC, Perry gave notice in early December that he was going to retire from the company, effective December 31, 2014.  (Decl. of Perry, ¶4.)  On December 11, 2014, he accepted a position at Cepheid as Vice President, North America Commercial Operations (Decl. of Perry, ¶5), and signed a Cepheid Change of Control Retention and Severance Agreement and a Cepheid Employee Invention Assignment and Confidentiality Agreement, both controlled by California law. (Decl. of Perry, ¶6, Exhs. C and D to Decl. of Perry.) He commenced employment in January 2015.  (Decl. of Perry, ¶10.)  In his new role at Cepheid, he too received a Cepheid email address, a Cepheid California office and local 408 area code cell and landline phones. (Decl. of Perry, ¶¶12 and 16.)  He too has a corporate apartment. (Decl. of Perry, ¶16.)  He, too, by virtue of his Cepheid-issued laptop with VPN has a virtual California office that allows him to communicate with Cepheid employees via email or phone wherever he is located.  (Decl. of Perry, ¶¶10, 11, 14 and 15.)  Although he maintains a residence in Georgia, he receives incentive compensation based upon sales of Cepheid's products made in California and for which revenue is received in California. (Decl. of Perry, ¶17.)

Jennifer Power Richards was employed by APOC from September 2009 until her resignation on December 4, 2014.  After signing and accepting a Cepheid employment offer on December 10, 2014, she commenced work at California-based Cepheid as Director of Marketing, Healthcare-Associated Infections on December 30, 2014. (Decl. of Richards, ¶4.)  In its offer,

Cepheid agreed to pay moving expenses for Richards to move her residence from Pennsylvania to California. She is in the process of doing so at present. (Decl. of Richards, ¶4.) Richards reports to a California-based manager, has a dedicated Cepheid office, Cepheid email and local 408 area code landline and cell phones. (Decl. of Richards ¶¶10, 11.)

She also spends substantial time in Cepheid's Sunnyvale headquarters; and will spend more time there after her relocation. She has a Cepheid laptop with VPN that allows her to communicate with California-based Cepheid employees from anywhere that has an internet connection, including Pennsylvania. (Decl. of Richards, ¶¶12, 13, 14 and 15.) When she is not in California, her laptop extends her virtual California office to allow her access to her California-based manager and other California-based employees. (Decl. of Richards, ¶¶13 and 14.) She too signed a Cepheid Inventions Assignment and Confidentiality Agreement that is governed by California law. (Decl. of Richards, ¶8.)

On or about December 22, 2014, before either Perry or Richards started their Cepheid employment, Farrell, John L. Bishop (Cepheid's CEO and Farrell's superior) and Cepheid's General Counsel received a letter from Kirkland & Ellis, Abbott's outside counsel, claiming they were investigating Farrell's actions as to Perry and Richards' new employment, and stating that Farrell and Cepheid should preserve all records related to their investigation. (Decl. of Farrell, ¶19, Exh. H to Decl. of Farrell.) This concerned Farrell, as he believed that Abbott was accusing him of something that he did not do; and since the letter was addressed to both Farrell's superior and Cepheid's General Counsel, he was worried about his position with his new company. (Decl. of Farrell, ¶¶19, 20.) The very next day, December 23, 2014, Perry and Richards received letters from Abbott's in-house Divisional Counsel demanding that they honor the terms of their Employee Agreements and that any violation or inducement by Cepheid to violate the agreements would be considered "serious" by Abbott. (Decl. of Richards, ¶6; Decl. of Perry, ¶7.)

Against this backdrop, Cepheid, Farrell, Perry and Richards filed their Declaratory Relief action with this Court on December 30, 2014.  Cepheid and all three individual California-based Plaintiffs sought declaratory relief that Paragraphs 9, 10, 11 and 12 of the Abbott Employee Agreements signed by Farrell, Perry and Richards are void under California Business & Professions Code Section 16600.

In response to the complaint, Abbott filed three separate state court actions in Georgia (against Cepheid and Perry), in Pennsylvania (against Cepheid and Richards) and in Tennessee (against Cepheid and Farrell) on February 9, 2015. (Decl. of Overbeck in Support of Abbott's moving papers, ¶3, 4, and 5.)  Defendant's Motion to Dismiss or Stay the Declaratory Relief action was filed with this Court on the same day.  Each of the three state court actions sought Declaratory Relief as to the restrictive covenant contained within Paragraph 12 of Abbott's Employee Agreement.

Defendant has moved this Court to dismiss or stay this Declaratory Relief action because it filed three state court actions, one in Georgia, one in Pennsylvania and one in Tennessee on the same day as its motion.  On February 12, 2015, after Cepheid was served, Cepheid removed the state court actions to federal court pursuant to diversity. (Decl. of Russell, ¶3.)  The next day after the removal (February 13, 2015), Abbott voluntarily dismissed the removed actions without prejudice and then re-filed state court actions against the three individuals without naming Cepheid as a defendant. (Decl. of Russell, ¶¶4, 5.)  Without Cepheid as a defendant, the three re-filed actions cannot be removed to federal court.

### III.   LEGAL ARGUMENT

#### A.   The *Brillhart* Factors Weigh in Favor of Proceeding with this Action

For the purposes of this Opposition to Defendant's motion to dismiss or stay this Action

based on Plaintiff's First Amended Complaint, an analysis and weighing of the *Brillhart v. Excess In. Co.,* 316 U.S. 491(1942) factors is appropriate.  A court in exercising its discretion to proceed with a declaratory relief action should consider if the action would:  1) needlessly determine issues of state law: 2) help a party avoid state court proceedings (forum shopping); and 3) result in duplicative litigation.  *Continental Casualty Co v. Robsac Indus.,* 947 F. 2d 1367, 1370-1371 (9th Cir. 1991) *overruled on other grounds by Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1227 (9th Cir. 1998); *Chamberlain v. Allstate Ins. Co.,* 931 F. 2d 1361, 1367 (9th Cir. 1991).

### 1)  *Brillhart* Factor 2:  Plaintiffs Properly Filed in Northern California, While Defendant is Forum Shopping

Defendant attempts to persuade this Court that Plaintiffs' filing in the Northern District of California, where the individuals Plaintiffs are employed by Cepheid and Cepheid is headquartered, is forum shopping.  Defendant first argues that the Plaintiffs have "nominal connections" to Northern California and that their Abbott employment contracts "are governed by Illinois law."  (Defendant's Memorandum, p. 8: 9-10.)

Clearly, the declarations of Farrell, Perry, Richards and Fitzgerald demonstrate that the individual Plaintiffs are employed in Northern California and have substantial connections and contacts both in and with Northern California.  Their Cepheid offices are all located in Northern California; they spend substantial working time in Northern California; their communications with the outside business world indicate that they are employed in Northern California (cell phone area codes, business card addresses, email addresses, etc.); they are all integrated into the Cepheid, Sunnyvale hierarchy; they generate revenue for Cepheid, received in Sunnyvale, California; they are paid out of Cepheid, Sunnyvale, California; when working remotely (on the business road and in their homes and company provided apartments), they work using a "virtual" office—as if they

were working out of their offices in Sunnyvale.  In fact, at least one of the individual Plaintiffs is in the process of moving his/her home to Northern California.

This action is highly distinguishable from the facts in *DeFoe v. Proctor & Gamble Co., 831 F. Supp. 776 (N.D. Cal. 1993),* which Defendant highly relied upon in its Points and Authorities.  As Defendant explained:  "The court noted that, aside from his new employer, the former employee had <u>little connection</u> to California, and thus found the declaratory relief action was filed only 'to secure a California forum." (Defendant's Memorandum, p. 10: 11-13 (emphasis added); citing *DeFoe v. Proctor & Gamble Co., 831 F. Supp at 778.)*  Our Plaintiffs have significant connection to California; they are employed here.

As for Cepheid, of course, Defendant does not try to argue that Cepheid has only nominal connections to Northern California.  Obviously, Cepheid, a California corporation, is headquartered in Sunnyvale, manufactures the majority of its products in Sunnyvale and receives its revenue in Sunnyvale.  In *DeFoe*, the new California employer was not a party to the action.

The portion of Defendant's argument that Plaintiffs were forum shopping because their Abbott employment contracts are governed by Illinois law also misses the mark.

Both state and federal courts in California are clear on their unwillingness to enforce restrictive covenants against workers employed in California.  California. Bus. & Prof. Code Section 16600 provides, in relevant part, that "every contract by which anyone is restrained from engaging in a lawful profession, trade, business of any kind is to that extent void." *Edwards v. Arthur Anderson,* 44 Cal. 4th 937, 945 (2008).   Even though California state and federal courts have  generally accepted contractual choice of law provisions, they refuse to accept restrictive covenants or contractual provisions that violate the California public policy contained within Section 16600. *Application Group v. Hunter Group,* 61 Cal. App. 4th 881 (Cal. Ct. App. 1st Dist.

1998).

California's protection of California employers and workers under Section 16600 was reinforced by its Supreme Court in *Edwards, supra,* wherein the Court concluded that Section 16600 protects the important legal right of persons to engage in their profession of their choice and that a former employer cannot restrain a former employee, in any manner, from engaging in his/her trade.  In sweeping language, the Court ruled that any enforcement of a restrictive covenant would violate Section 16600 unless it was justified by one of the specific and narrow exceptions to the general rule (e.g., as part of the sale of a business).

Any restrictive covenant violates California public policy. Cases subsequent to *Edwards, supra,* such as S*ilguero v. Creteguard, Inc.,* 187 Cal. App. 4th 60, 68-69 (2010) (citing *VL Sys., Inc. v. Unisen, Inc.,* 152 Cal. App. 4th 708 (2007)) have concluded that a "no hire" provision, which prevents one party from hiring the employees of another, seriously impacts the rights of a broad range of third parties, thereby hindering the mobility and betterment of employees and violates Section 16600.

California's interest in enforcing Section 16600 is so strong that in *Application Group, Inc. v. Hunter Group*, Inc., 61 Cal. App. 4th 881, a California Court of Appeal invalidated and refused to enforce an out-of-state non-compete agreement signed by an out-of-state employee even though that employee had little connection to California.  The *Application Group* court held that California has a materially greater interest to apply its strong public policy contained within Section 16600 when individuals are employed in California.  *Id. at* 895.  In reaching its conclusion to invalidate the non-compete clause in an employment contract that was valid in the state where it was entered, the California court determined that the choice of Maryland law would violate the public policy of the State of California, where it inhibited a California-based employer from being able to recruit or hire a nonresident for employment in California.  *Id. at* 902-903.

In the *Application Group* case, the individual plaintiff's connections to California were far more tenuous that those of the individual Plaintiffs in this Action. The *Application Group* plaintiff had never set foot in California before the declaratory relief action was filed and was a resident of Maryland for many years. However, the California court ruled that to be employed in California and protected by the strong public policy contained within Section 16000, "does not turn on whether the recruited employee physically resides in California." *Id. at* 905. In analyzing what it means to "be employed" in California, the court referenced the case of *Birbrower, Montalbano, Condon & Frank v. Superior Court,* 17 Cal. 4th 119 (1998) to determine what constitutes sufficient contacts for employment in California. The court stated that the worker does need sufficient contacts with California because "mere fortuitous or attenuated contacts" will not suffice. (See *Application Group at 904, fn.* 19, citing *Birbrower* at 128-129.)

In the instant case, all three individual Plaintiffs against whom state court actions have been brought will more than meet the *Birbrower* test due to their quantitative and qualitative contacts with California. They work out of Cepheid's offices in California, have California-based Cepheid dedicated offices, Cepheid email accounts and Cepheid issued laptops with VPN, and have continual contacts with other California-based Cepheid employees. They impact Cepheid's business in Sunnyvale in various ways, and are represented to the outside business world as being employed in Sunnyvale, California. Hence, California's interest in this matter as set forth in *Application Group* thwarts Abbott's position that California does not have any interest in the enforcement of the Abbott Employee Agreements against a California-based employer and employees working out of its California headquarters.

Defendant next argues that Cepheid's General Counsel's alleged two communications between December 28, 2014 and December 30, 2014 constitute evidence of forum shopping by

Plaintiffs. [1]

Defendant attempts to characterize its attorneys' written demand letters and Cepheid's General Counsel's two communications as "informal discussion to try to resolve any potential issues related to Plaintiffs' new employment…" (Defendant's Memorandum, pp. 4:3-5:2.) Defendant relies heavily on *Z Line Design, Inc. v. Bell 'O Int'l, LLC*, 218 F.R.D. 663 (N.D. Cal. 2003) and that court's statement:  "Here, plaintiff's counsel accepted the second deadline extension to discuss…settlement…with Z-Line, and created a reasonable expectation that Z-Line would explore settlement rather than litigation.  This was a misleading communication.  Under these circumstances, the court is satisfied that plaintiff filed this action in anticipation…that a suit…was imminent". *Id. at 666.*

Clearly, Defendant's characterizations of its written demand letters as part of settlement communications is not accurate.  The December 22, 2014 letter from Kirkland & Ellis to Farrell (and sent directly to Cepheid's CEO and General Counsel), and the December 23, 2014 letters from Abbott's in-house attorneys to Perry and Richards, are on their face designed to be threatening and chill Plaintiffs' lawful activities.  These letters were threatening to Farrell, and particularly to Richards and Perry, who had not even started working at Cepheid yet.  (Decl. of Farrell, ¶20; Decl. of Perry, ¶ 7; and Decl. of Richards, ¶6.)

Indeed, the December 22 letter from Kirkland & Ellis referred to Kirkland & Ellis' active investigation of this "serious matter" and advised Plaintiffs to "identify, preserve, and maintain all documents or communications…"  (Decl. of Farrell, ¶ 19; and Exh. H to Decl. of Farrell.) Presumably, Kirkland & Ellis will be the ultimate judge and jury of the results of its unilateral

---

[1] Defendant's characterization of the General Counsel's actions during this two day timeframe contain errors.  However, given that Defendant's characterizations have no ultimate relevance to the issue of forum shopping, as explained further in this section, Plaintiffs shall not submit facts disputing these irrelevant allegations.

investigation as to whether the unlawful covenants were breached. Similarly, the December 23 letters were not part of settlement negotiations. They were unilateral and concluded, "Any violation by your or inducement by Cepheid to violate your Employee Agreement will be taken very seriously by Abbott." (Decl. of Perry, ¶7, and Exh. E to Decl. of Perry; and Decl. of Richards, ¶6, and Exh. F to Decl. of Richards.)

Cepheid's General Counsel had no obligation to be deferential to Kirkland & Ellis' investigation into whether Farrell violated covenants against the public policy of California. Cepheid and the individual plaintiffs decided that they needed to file this Action to protect their lawful interest to compete freely. Defendant has presented no evidence that Plaintiffs deliberately searched through multiple courts and jurisdictions (forum shopping) before filing this Action.

The typical case of forum shopping involves a plaintiff filing a federal action to "avoid adverse rulings made in the state court or to gain a tactical advantage from the application of federal court rules." *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990). A plaintiff's decision to sue in the forum where its company is based does not amount to impermissible forum shopping. *See Stomp, Inc. v. Neato, LLC*, 61 F. Supp. 2d 1074, 1082 (C.D. Cal. 1999). Plaintiffs filed in the very jurisdiction where Cepheid is based and the individual Plaintiffs are employed. Defendant, rather, is seeking to gain a tactical advantage from the filing of three state court actions where it is not based to try to enforce unlawful covenants against California based employees.

Simply because Plaintiffs filed this Action in their "own backyard" in response to Defendant's threats and attempted intimidation, does not make it improperly reactive or defensive. "Federal declaratory judgment suits are routinely filed in anticipation of other litigation….Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum

shopping.'" *Sherwin-Williams Co. v. Holmes Cnty.,* 343 F. 3d 383, 391 (5th Cir. 2003); *see also Government Employees Insurance v. Dizol,* 133 F. 3d 1220, 1225 ("We know of no authority for the proposition than an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage.") and *Allstate Ins. Co. v. Herron,* 634 F. 3d 1101, 1107 (9th Cir. 2011) (stating that under the Declaratory Judgment Act, a district court may declare the rights of any interested party seeking such declaration, provided that the court's exercise of jurisdiction passes constitutional muster, citing *Dizol,* 133 F. 3d at 1223).

To the extent any party has engaged in forum shopping, it is Defendant.  Obviously, Defendant is shopping for the forum where it potentially can achieve its ultimate goal--to enforce unlawful covenants against a California company and its California employees. Defendant does not hide the fact that it is attempting to apply Illinois law to these California employees through state court actions in Tennessee, Pennsylvania and Georgia.  (Defendant's Memorandum, p. 8: 8-17.) Defendant certainly knows it will lose this Action in Northern California, based upon the law under Section 16600 cited in this Opposition.  Therefore, in a clear reaction to this Action, Defendant filed its motion to dismiss/stay, and its three state court actions on the very <u>same</u> day.

Defendant's reactive filings did not stop on the day of its initial state court filings.  Based on diversity, Cepheid lawfully removed all three state court actions to federal courts on February 12, 2015.  In reaction, Abbott dismissed them without prejudice on February 13, 2015 and then re-filed the same actions in the same three state courts against the individual Plaintiffs, after eliminating Cepheid as a defendant.  All of this maneuvering makes it clear which party is "forum shopping".  The intent of Abbott's initial filings in state courts on the same day of its motion, and after removal, dismissing Cepheid to defeat diversity, was simply motivated to support its motion

with this Court to dismiss/stay this Action. [2]

All of the string citations which Defendant includes in support of its argument that Plaintiffs engaged in impermissible forum shopping, involve different background facts and procedure, and are in applicable.  For example, Abbott relies on *Google, Inc. v. Microsoft Corporation,* 415 F. Supp. 2d 1018 (N.D. Cal. 2005).  However, that case is clearly distinguishable on its facts.  In *Google, supra,* a former Vice President of Microsoft signed an employment agreement in Washington while he was living in Washington that contained a restrictive covenant not to compete.  When the employee quit Microsoft to work for Google, Microsoft filed suit in Washington state court for breach of the covenant not to compete, misappropriation of trade secrets, and tortious interference with contractual relations.  Thereafter, Google and the employee filed in California state court seeking a declaration that the covenant not to compete was unenforceable under California law.  Microsoft removed the California state court case; but in the interim, the Washington state court held an evidentiary hearing and granted a preliminary injunction.

The California District Court stayed its action, finding that Google's reactive filing a declaratory relief action in California when faced with an injunctive proceeding in Washington was forum shopping.  In the instant case, in contrast, Plaintiffs filed first, based upon threatening communication from Abbott, not in response to a state court filing with injunctive relief ordered.  They had a right to file where the individual Plaintiffs are employed and Cepheid is based.  Also, Microsoft sought application of Washington state law in Washington State.  Here, Abbott filed actions in Georgia, Pennsylvania and Tennessee and is asking these states to apply Illinois law.

As another example, Defendant relies heavily on *DeFoe v. Proctor & Gamble* case, 831 F.

---

[2] Shortly before filing this Opposition, Plaintiffs have learned that Abbott may have amended at least one of its state court actions to re-name Cepheid.  The Abbott reactions continue.

Supp. 776.   In *Defoe, supra,* an executive and his new employer filed a declaratory relief action against his former employer in state court, seeking relief from restrictive non-compete provisions in a stock option plan, under which the executive purchased a significant amount of stock.  The provisions were governed by Ohio law, where the former employer had its headquarters and the former employee resided.  The former employee filed first in state court in California.  Within a day of the initial filing, the former employer filed in state court in Ohio.  After the former employee's action was filed, the former employer removed the California state case to U.S. District Court in California, and filed a Motion to Dismiss, Stay or Transfer the case to U.S. District in Ohio in light of the pending Ohio case.  In the interim, the Ohio court issued an injunction preventing the former employee from working for his new competitive employer in California.

As in *Google v. Microsoft,* the former employer in *DeFoe* was based in the state where the state court action was filed (Ohio), and sought to apply Ohio law against its former Ohio employee.  Such is not the case in this Action. Key differences between *Defoe* and the present Action are that the parties in *Defoe* agreed that the California and the Ohio action presented the very same issues, and that the former employer filed its state court action in its own forum state, seeking enforcement of a contract made entirely in Ohio with an Ohio resident.  In the instant case, the re-filed actions in Georgia, Pennsylvania and Tennessee do not mirror the present case; the California case seeks declaratory relief on multiple restrictive covenants that are being threatened against a California-based employer and California-based employees.  Additionally, all of the re-filed state actions do not include Cepheid as a defendant and none of the substantive issues regarding the restrictive covenants relate to issues of law under the states, in which the actions were brought.

Without a doubt, Abbott wants to avoid a California forum at all costs.  If this Court were

1  to dismiss or stay the current action, forum-shopping would be encouraged, not discouraged,

2  Abbott would be rewarded for its manipulative and reactive litigation actions in its attempt to

3  enforce unlawful covenants that violate California's strong public policy.

4

5

6           **2)** ***Brillhart*** **Factors 1 and 3:  Plaintiffs' Action Is Needed And There Is No**
              **Compulsion to Dismiss the Action Simply to Avoid Duplicative Litigation**
7

8           In arguing that Plaintiffs' Northern California Action is needless, Defendant cites cases

9  with incomparable procedural backgrounds than this Action, and attempt to rely on the principles

10  of comity.

11

12          Although emphasis may not be needed, this Action involves a Defendant forum shopping

13  by filing three state court actions seeking the application of Illinois law by those unrelated states.

14  Cases such as *Continental Casualty Co. v. Robsac Indus.,* 947 F. 2d 1367 are inapposite because

15  the state court action at issue was seeking to apply the state court's own laws, not those of any

16  other state.  *Id. at* 1371.  This Action, where Cepheid is based and the three individual plaintiffs

17  are employed, is needed to enforce California public policy and void the restrictive covenants.

18
    
19          Along the same lines, principles of comity do not weigh in favor of dismissal of this

20  Action.  Respect for comity is strongest and normally applicable, when a party seeks a state to

21  apply its own laws, in which it has an interest. In this Action, Defendant is seeking to apply its

22  laws to three states with which it has no connection.  As California has the greatest interest, given

23  the fact that the Plaintiffs are a California-based corporation and individuals working out of

24  California, the federal court should apply California law to this matter.  Defendant is attempting to

25  interpret "comity" to side-step a state's strong public policy.

26

27          To the extent Defendant will argue that this Action is needless because Plaintiffs can

28  simply argue in the state actions that Pennsylvania, Tennessee and Georgia courts should apply

California law under conflict of law rules, this argument does not eviscerate the need for this Action to proceed.  Although Plaintiffs know that California public policy should be applied in this Action, to uphold their rights under Section 16600, there is no certainty that California law will be applied in the other three states.  Of note, Georgia continues to adhere to the "traditional conflict of law rules" and does not give appropriate deference to the strong public policy of other states.  *Convergys Corporation v. Keener,* 276 Ga. 808, 812 (2003). (Case attached to the Declaration of Ann Liroff.)

Moreover, this Action is not needless because Plaintiffs are challenging four restrictive covenants contained in their Abbott Employee Agreements, and Abbott is only seeking to enforce one of the four restrictive covenants in the three state court actions.  In Footnote 3 of Defendant's Points and Authorities (Defendant Memorandum, p. 5: 25-28 (fn3)), Abbott argues that the other three covenants are "moot" because the current state court actions do not currently seek to enforce these three covenants.  What assurances do Plaintiffs have that Defendant will not change its mind and amend its state court actions to add these other three restrictive covenants, particularly if this Court stays this Action?  Plaintiffs certainly cannot cite Footnote 3 as a binding contract.  Moreover, at the time of the filing of this Opposition, Cepheid was not re-named as a defendant in all of the three state court actions, and needs this Action for relief.

Defendant spends the least amount of time addressing the third *Brillhart* factor for consideration—the factor of duplicative litigation.  How could it?  Defendant has filed three different state court actions seeking declaratory relief on the exact same issue, which Abbott contends is based on another state's laws.[3]

Regardless, this Action is not duplicative.  As referenced above, this Action seeks declaratory relief as to four unlawful covenants; the state court actions address only one.  Also, as

---

[3] The applicable plaintiffs will be filing motions to stay in all of the three court state actions.

of the time of filing this Opposition, Cepheid has not been named as a party in all three state court actions and cannot obtain relief without this Action.

///

### 3)  Defendant Relies Heavily on Insurance Related Cases in its Motion, which are inapplicable

Most of Defendant's citations in its brief relate to declaratory relief actions filed by insurance companies after an insured files a state court action against them.  These cases are clearly distinguishable from this Action, as insurance law is an area that Congress has expressly left to the state through the McCarran-Ferguson Act (15 U.S.C. §§1011-1015 (1945)). See *Continental Casualty Co., supra,* at 1371.  In such cases, federal court abstention is appropriate due to concern with protecting complex state administrative processes from undue federal interference.  *See New Orleans Public Serv. Inc. v Council of New Orleans,* 491 U.S. 350, 358-359 (1989).  In this Action, there is no need for abstention, as Defendant is not protecting a parallel state court proceeding on a unique issue of its law.  It is asking in each case that the state court apply Illinois law, not state law related to the forum state.

### B.    Other Factors Favor Proceeding with this Action.

Federal courts will look at other relevant factors, in addition to the primary three *Brillhart* factors*,* in exercising their discretion to proceed with a declaratory relief action.  See *Chamberlain v. Allstate Ins. Co*. 931 F. 2d at 1367.  In *Chamberlain,* the court concluded that the pendency of a state court action does not of itself require a district court to refuse declaratory relief in federal court.  It stated that consideration must be given to whether the questions in controversy between the parties to the federal suit and which are not foreclosed under the applicable substantive law can be best settled in the proceeding pending in state or federal court.

In this Action, other factors favoring proceeding with this Action include:  1) The most

convenient forum for four out of the five parties is Northern California where Cepheid is based and where the individual Plaintiffs are employed, *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002);  2) Federal courts find that where a dismissal of a federal court action in favor of a state court action would contravene a strong public policy of the forum in which the suit was originally brought, the selection clause should not be honored, *see Murphy v. Schneider Nat'l Inc.,* 362 F. 3d 1133, 1140 (9th Cir. 2004);  and 3) Dismissing or Staying this Action will reward Defendant's blatant forum shopping.

## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs respectfully requests this Court to exercise its discretion to proceed with the Action.

Date: February 23, 2015                    Respectfully Submitted,

                                           SIMPSON, GARRITY, INNES & JACUZZI
                                           Professional Corporation`

                                           By: /s/ Ronald F. Garrity
                                               PAUL V. SIMPSON, BAR NO. 83878
                                               RONALD F. GARRITY, BAR NO. 148713
                                               H. ANN LIROFF, BAR NO. 113180
                                               Attorneys for Plaintiffs
                                               Cepheid, Peter Farrell, Glynn Perry and Jennifer
                                               Richards